## Mazur *v.* Klewans, Appellant.

Argued April 13, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Roy Wilkinson, Jr.,* with him *John G. Love* and *Love & Wilkinson,* for appellant.

*Samuel H. Jubelirer,* with him *William W. Litke* and *Jubelirer, Smith & Oyler,* for appellee.

OPINION BY MR. JUSTICE JONES, May 22, 1950:

The question raised on this appeal is as to the sufficiency of the evidence to establish agency between the owner and the driver of the automobile involved in the accident in suit. The plaintiff is the driver's wife. She recovered a verdict against the owner for damages for injuries suffered by her due to the negligence of her husband in his operation of the automobile whereof the owner was also an occupant. The defendant moved for

a new trial and for judgment n. o. v. The learned court below denied both motions; and the judgment from which the defendant appeals was entered on the verdict. The amount of the verdict is not questioned; and no trial error is assigned. The appellant urges here only its motion for judgment n. o. v. In that situation, the material facts, as well as the reasonable inferences to be drawn therefrom, are necessarily to be taken most favorably to the plaintiff.

Muriel Mazur, the plaintiff, her husband Julius and the defendant, Sylvan Klewans, were friends, all residing in Lock Haven, Pa. Julius's parents lived in Altoona. The Mazurs did not own an automobile but Klewans did. Julius and Klewans planned to go, with Mrs. Mazur, in Klewans' car to visit Julius's parents on an afternoon, intending to remain there overnight. On the day of the proposed trip, Klewans and Julius in Klewans' car and with him driving, arrived at the Mazur residence to pick up Mrs. Mazur. When she came out to the car, Klewans, who had alighted therefrom, explained that one of his eyes had been irritated by a foreign substance, which a doctor had removed, and he asked Julius if he would drive. Julius assented and took the driver's seat. Klewans asked Mrs. Mazur if she preferred to ride on the front seat with her husband. She expressed such a preference and got in there with the assistance of Klewans who also asked if she would mind if all three of them rode on the front seat. She said she did not mind, but Klewans, nevertheless, took his place on the rear seat. The three occupants retained those positions in the car throughout the trip up to the time of the accident. While on their way, there was occasional general conversation and twice Mrs. Mazur requested her husband not to drive so fast. Upon her first request, he temporarily complied by reducing the automobile's speed, but, a little later, she made her second request. This time Klewans interjected, "Mitzi, leave him alone, he is

doing all right." A few seconds later, the car skidded, ". . . went into a spin . . . out of control and . . . hit [a] telephone pole," inflicting the injuries for which Mrs. Mazur sued. It is uncontroverted that the driver's negligence was the cause of the injury.

The appellant contends that the evidence does not support a finding that Julius was the agent of Klewans in the operation of the automobile and that, even if it were *prima facie* sufficient for that purpose, the plaintiff is concluded in such regard as a matter of law by a written statement obtained from her by an insurance adjuster while she was still in the hospital.

The latter contention is so devoid of any merit that we may as well dispose of it at once. The learned trial judge admitted the statement in evidence and submitted it to the jury for an appraisal of its probative worth. That was the most the defendant was entitled to in the circumstances. The statement had little integrity as a formal document and, in no event, did its terms exclude a finding of Julius's agency. Mrs. Mazur, while conceding that the signature to the statement was hers, testified that she had no recollection of making the statement, the body of which in its entirety was admittedly in the handwriting of the insurance adjuster. Mrs. Mazur's attending physician testified that at the time the statement was taken she was still suffering great shock and pain and was continuously under heavy doses of narcotics to relieve her suffering. The doctor gave it as his opinion that at the time in question Mrs. Mazur was *not* ". . . competent to give a clear rational statement." But, beyond that, taken at face value, the statement did not refute the existence of the driver's agency. The portion relied upon by the defendant as affording such refutation is merely that "Mr. Klewans was not acquainted with Julius's parents and had agreed to take us to Altoona, Pa. because of friendship." By no means, did that fact preclude an agency relationship.

A case directly in point on principle is *McMahen v. White*, 30 Pa. Superior Ct. 169, where it was held that one driving a horse and carriage with the owner's permission is, in such capacity, the agent of the owner, the latter being an occupant of the vehicle, and that, in such circumstances, the owner is liable under the rule of *respondeat superior* for damage to another through the negligence of the driver. It is not inappropriate that we quote at length from the thorough and exhaustive opinion of President Judge RICE for the Superior Court in the *McMahen* case, supra, as follows: "The person sought to be held responsible must have the right of selecting the person to render the service, but speaking particularly of a case like the present, it is not material whether the latter was driving at the request of the owner or person having the right of control of the management of the vehicle, or was a volunteer. . . . Some point was made of the fact that the driver as well as the defendant was engaged in a matter in which she was personally interested; in other words, as expressed by the appellant's counsel, they were on a joint pleasure trip. This circumstance might have an important bearing upon the question if the defendant had not been the owner of the horse and carriage, . . . But if all the elements necessary to bring a case within the rule under consideration are present, we are unable to agree that the mere fact that the driver, as well as the owner who is riding in the vehicle, has an interest personal to himself in reaching the destination will relieve the owner from responsibility to third persons. A somewhat extended examination of authorities bearing upon the question warrants us in saying that they generally agree, that the real elements at the foundation of responsibility to third parties of the person sought to be charged as master, in a case like the present, for the negligent manner in which the service rendered for him was performed, are the right to select the person who is to render

the service, and the right to control his action while so doing. As has been declared in numerous cases, he must not only have the right to select the servant or agent, but to direct the mode of performance, and to so control him in his acts in the course of his rendition of the service as to prevent injury to others."

Since the ruling in the *McMahen* case, supra, there have been a number of decisions by both this court and the Superior Court which have uniformly followed the principle enunciated in the *McMahen* case. Thus, in *Reilly v. Philadelphia,* 328 Pa. 563, 567, 195 A. 897, where the plaintiffs were injured while guests in an automobile in which the owner was riding but which another was driving, it was held that "Under the circumstances here present they [the guests] are not to be held liable for the negligence of the driver. . . . They are entitled to their verdicts against Small [the owner] who was present and in control of the operation of his car [although not driving it]." See also *Atkinson v. Coskey,* 354 Pa. 297, 304, 47 A. 2d 156. In *Bell v. Jacobs,* 261 Pa. 204, 208, 104 A. 587, it was said that "A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven. There is a presumption, not here rebutted, that *an owner present in his car has power to control it"* (Emphasis supplied). In the instant case, there was nothing shown in derogation of Klewans' power to control the operation of his automobile. On the contrary, by his comment, he impliedly assented to the manner in which it was being driven at the time of the accident. See also *Von Cannon v. Philadelphia Transportation Company,* 148 Pa. Superior Ct. 330, 340, 342, 25 A. 2d 584; *Christian v. Gwynne,* 103 Pa. Superior Ct. 539, 541, 158 A. 290.

The cases of *Watkins v. Overland Motor Freight Company, Inc.,* 325 Pa. 312, 188 A. 848; *Klein v. Klein,* 311 Pa. 217, 166 A. 790; and *Rodgers v. Saxton,* 305 Pa. 479, 158 A. 166, cited by the appellant are not in point. Each of those cases involved a situation where it was sought to impose liability on the wife-owner of a car for her husband's negligent driving merely because of her presence in the car and her ownership. But, the relationship of husband and wife furnishes an exception to the general rule. As *Rodgers v. Saxton,* supra, recognized (p. 485),—"The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation." See also *Von Cannon v. Philadelphia Transportation Company,* supra, at p. 341.

Judgment affirmed.

BELL, J., dissents.