### LEE *v.* ARLINGTON PEANUT COMPANY.

No. 9272. April 11, 1933.

*A. L. Miller* and *Lowrey Stone*, for plaintiff.

*J. M. Cowart* and *A. H. Gray*, for defendant.

Hill, J.   General Lee brought a petition against Arlington Peanut Company for cancellation of a deed, alleging in substance that he is in possession of and has title to a certain described tract of land in Calhoun County; that in June, 1927, he gave his note to the Arlington Peanut Company, and to secure its payment executed to the company a deed conveying the land, with power of sale; that he paid the note in the fall of 1927 and received his note, but neglected to obtain the security deed; and that in November, 1929, the company advertised and sold the land under the power of sale contained in the deed, and was the purchaser of the land at the sale.   In its answer the defendant denied that the secured debt had been paid, and contended that the sale of the land was valid.   It averred that it had "paid off" certain executions against the plaintiff, "in satisfaction of said liens," under which the sheriff was about to sell the land, one of the executions being for $188.25 for outstanding taxes against the land; that there was a common-law execution against General Lee in favor of B. H. Askew, in the sum of $441.28, and that the defendant was compelled to "pay off" these executions, which were prior liens against Lee, in order to protect its interest in the property.   The defendant prayed, in the event the plaintiff's prayers were granted, that it be subrogated to the rights of the holders of the fi. fas.   The plaintiff moved to strike the portions of the answer with reference to the right of subrogation.   This motion was overruled.

The court submitted to the jury but one question, viz., whether or not the secured debt had been paid.   The jury found that the debt had been paid.   The court then instructed the jury to find

that the defendant had paid off the fi. fas., which fact was not disputed. Thereupon the court rendered a decree that the deeds be canceled, that the secured debt had been paid; that the defendant was entitled to be subrogated to the rights of the holders of the fi. fas., and that it have judgment against Lee therefor, and that such judgment operate as a special lien against the land. To this decree, and to the direction of the verdict, the plaintiff excepted.

The court erred in its rulings. The answer of the defendant did not make out a case for application of the doctrine of subrogation. The defendant in its answer prayed, in the event the jury should find that the note secured by the land had been paid, that it should be subrogated to the rights of the plaintiffs in fi. fa., who held superior liens to that of the defendant. In other words, the answer prayed for subrogation only in the event it should be determined that the defendant had no title to the premises. The answer did not aver any facts which would constitute conventional subrogation; that is, any agreement for subrogation between the plaintiff and the defendant. It did attempt to plead an equitable subrogation arising from the law and circumstances of the case. Legal subrogation will arise in only two instances: (1) where the person advances money to pay a debt which, upon the default of the principal debtor, the person advancing the money would be bound to pay; (2) where a person advancing the money had an interest to protect. In *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604, 611 (123 S. E. 883), it was said: "This court has denied that subrogation is a benevolent doctrine and that equity will apply it in any case in which justice required; and this court has refused to follow the cases which were based on this theory of the doctrine of subrogation. On the contrary, it has held 'that subrogation will arise only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or where he had some interest to protect. . .' The claimant does not make a case which falls within either of these categories." This same doctrine was stated in *Wilkins* v. *Gibson,* 113 *Ga.* 31, 47 (38 S. E. 374, 84 Am. St. R. 204), where this court followed the rule laid down in Ætna Ins. Co. *v.* Middleport, 124 U. S. 534, 550 (8 Sup. Ct. 625, 31 L. ed. 537), a well-considered case, in which Mr. Justice Miller, quoting Chancellor Walworth in Sanford *v.* McLean, 3 Paige, 122, said: "'It is only in cases where the person

advancing money to pay the debt and a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect.'" See, to the same effect, *Brown* v. *Hooks,* 133 *Ga.* 345, 349 (65 S. E. 780), where the rule was clearly stated by Mr. Justice Beck. A mere volunteer is not protected under the doctrine just announced. In Ætna Ins. Co. *v.* Middleport, supra, it was said: "Any one who is under no obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer." In 25 R. C. L. 1324, it is said that the doctrine of subrogation "will not be decreed in favor of a mere volunteer, who, without any duty moral or otherwise, pays the debt of another, for such a person can establish no equity, and can obtain the right of substitution by contract only." The language of the answer and its prayer are, in part: "In the event it should be determined that [the defendant] has no title to said premises, and the prayers of the plaintiff in his said petition be granted, that this defendant be subrogated to the rights of B. H. Askew, and to the rights of the State of Georgia, and Early County," etc. This answer was insufficient to entitle it to the benefit of the doctrine of subrogation. It was not a surety for Lee, and was under no obligation, legal or moral, to pay the claims of Askew, or of the State, or of the county, if Lee failed to do so. Under the present state of the record, the defendant is entitled to neither conventional subrogation nor equitable subrogation, and the court erred in overruling the motion to strike that portion of the answer which averred that the defendant was entitled to subrogation.

On the trial the court submitted but one question to the jury, and that was whether the secured debt had been paid as alleged. This allegation was denied by the defendant. The jury found that the note secured by the land in controversy had been paid; but it is insisted by the defendant that there is no evidence in the record to show when the note was paid,—that it might have been paid after the sale of the land which was bought in by the defendant. It was alleged in the petition that the plaintiff paid the debt secured by the land, "prior to the insertion of said advertisement in said newspaper on the dates and in the amounts as follows: August 19, 1927, $116.00; August 23, 1927, $33.92; August 27, 1927, $80.00;

and October 19, 1927, $34.69." This allegation was denied by the answer, and the issue thus formed was submitted to the jury, and the jury answered that the secured debt had been paid. Under the allegations we must conclude that the note secured by the land was paid prior to the sale of the land in 1929. Upon the finding by the jury the court decreed cancellation of the deed, and adjudicated that the defendant was entitled to subrogation. In the view we take of the case, the defendant had no interest to protect. When the plaintiff paid the note secured by the land, the paymnt of the debt revested in the grantor a perfect title to the land thereby conveyed. *Citizens Mercantile Co.* v. *Easom,* supra. Therefore, when the note was paid, the defendant had no legal title and no interest to protect; and if it voluntarily paid off other claims against the plaintiff, it did so at its peril. It will be observed that the fi. fas. which the defendant paid were not transferred, but paid off in full satisfaction of the liens, by the defendant, when it had no interest to protect. In the view we take of the case, another trial is unnecessary; but the judgment is reversed with direction that the trial court set aside and eliminate that portion of its decree to the effect that the defendant is entitled to subrogation for having paid off the fi. fas. In this view it would be useless to send the case back for another trial, as the jury has passed upon the only issue of fact in the case, that is, whether the secured note was paid before the sale of the land, and has answered that question in the affirmative.

*Judgment reversed, with direction. All the Justices concur.*